PER CURIAM.
Maxel Peeples appeals the summary denial of his motion for postconviction relief. We affirm.
Easiest to resolve are the several claims regarding the legality of Peeples’s sentence. The record refutes his allegation that one or more minimum mandatory sentences were imposed without statutory authority. Although one unauthorized mandatory term was included in the original judgment and sentence, that error was corrected on direct appeal and by the actions of the trial court after mandate. Peeples v. State, 562 So.2d 863 (Fla. 2d DCA 1990). Second, a guideline scoresheet error is shown to be harmless in that it did not affect the length of sentence. See Gibbons v. State, 543 So.2d 860 (Fla. 2d DCA 1989). Finally, while Peeples appears to argue that consecutive minimum mandatory sentences were imposed in violation of Palmer v. State, 438 So.2d 1 (Fla.1983), his motion fails to provide a factual basis for such a claim.
Peeples also contends that he received ineffective assistance from his privately-retained trial attorney. Many of the claims, e.g., lack of preparedness, are con-clusory in nature. It is also doubtful whether one could ever be ineffective for failing to persuade a judge to depart downward from the guidelines, as Peeples suggests this attorney was. However, though we agree with the trial court that Peeples’s motion fails to establish a prima facie showing of prejudice from counsel’s deficiencies, like the trial court we do not reach this conclusion without pause.
Attached to the order presently under appeal is a transcript of Peeples’ sentencing. This transcript reflects, at the very least, a serious breakdown in communication between Peeples and trial counsel. In fact, the trial judge himself appears to have been concerned about certain details of the attorney-client relationship. Immediately after sentencing, when requesting the appointment of a public defender for appeal, Peeples mentioned that he had previously “fired” his attorney. Counsel advised the court that Peeples had tried to *317 discharge him only because “he had no money ... and he didn’t want me to go forward and work for him if he couldn’t pay.” However, though Peeples confirmed that he “could not afford” the attorney’s fee, he added that he “did not like the way the case was being handled.” When Pee-ples made his dissatisfaction known to counsel, “he told me ... that he could not be fired without his permission.” Counsel’s version of these facts was that “I could not be discharged in that manner ... I would have to get permission of the court.” The following exchange then ensued:
THE COURT: Did you ever ask the permission of the court to withdraw?
DEFENSE COUNSEL: No, Your Honor.
THE COURT: Why?
DEFENSE COUNSEL: Because it wasn’t necessary.
THE COURT: Why wasn’t it?
DEFENSE COUNSEL: Because I told Mr. Peeples that I wasn’t concerned about the money and if he could pay me, fine; if he couldn’t pay me fine.
* * * * * *
THE COURT: What did he say then?
DEFENSE COUNSEL: He said, “Well, very well.” He said, “I don’t like to have somebody work for me for nothing.” Those were his words.
******
THE COURT: Is that what you said, [Mr. Peeples]?
APPELLANT: No, sir. I said, I don’t have no other choice. I said, I guess I don’t know what to do.
THE COURT: What did you mean when you said you had no other choice?
APPELLANT: Well, I tried to get ahold of the Public Defender two or three times to appoint me another attorney.
THE COURT: Why did you not ask the court when you were in court on numerous occasions?
APPELLANT: He’s the lawyer. I guess he knows the law. I don’t.
******
I did not say go ahead and represent me. I just said, well, I don’t have no other choice. I said, whatever.
THE COURT: Is that what was said?
DEFENSE COUNSEL: That’s not the way I recall it, Your Honor. I recall it the way I just stated.
The court, though concluding that “real problems” existed, then determined that Peeples’s convictions and sentences should not be set aside, at least without a formal motion under rule 3.850. Though describing counsel’s performance as “inept and incompetent,” the court deemed the evidence of guilt “overwhelming” to the point “I’m not sure what other counsel could have done.” This is, in fact, essentially the burden imposed by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), upon one seeking to overturn a conviction on the basis of ineffective assistance of counsel.
Once his appeal was decided Peeples proceeded to file a formal 3.850 motion.[1] No factual basis is set forth, and the omissions complained of are confined to the sentencing phase of the case. As previously noted, the sentence, which is within the guideline range, has not been shown to be illegal in any way. Accordingly, we agree with the trial court that Peeples is not entitled to relief.
Affirmed.
CAMPBELL, A.C.J., and THREADGILL and PARKER, JJ., concur.

. The judge who made the ruling presently under appeal was not the original trial judge. He did, however, familiarize himself with the circumstances of this case, including the problems highlighted above.